OPINION OF THE COURT
Lester B. Adler, J.
The defendant stands accused under indictment No. 01-0300 of attempted disseminating indecent material to minors in the first degree (Penal Law §§ 110.00, 235.22) and attempted patronizing a prostitute in the third degree (Penal Law §§ 110.00, 230.04). By notice of motion dated April 19, 2001, with accompanying affirmation, the defendant moves for omnibus relief. In response, the People have submitted an affidavit in opposition dated May 21, 2001, with accompanying memorandum of law. In response, the defendant submitted a reply affirmation dated June 5, 2001.
It is alleged that on or about and between December 21, 2000 and January 12, 2001, while using a computer communication system, to wit, America Online (AOL), the defendant engaged a person he believed to be a minor in a series of sexually explicit on-line conversations. It is further alleged *184 that during the course of these on-line conversations, the defendant offered the person he believed to be a minor money in return for sex with the defendant. This motion is disposed of as follows:
I. Motion to Dismiss the Indictment Due to Prosecutorial Misconduct in the Grand Jury
This application is denied. Dismissal of an indictment for impairment of the integrity of a Grand Jury proceeding (CPL 210.35 [5]) is an extraordinary remedy (see, People v Rosado, 212 AD2d 426) which requires meeting a very high and precise standard (see, People v Darby, 75 NY2d 449, 455). Where dismissal on such ground is based upon prosecutorial misconduct, the instances of such misconduct must be deliberate and must not be isolated (see, People v Huston, 88 NY2d 400).
It cannot be said here that the prosecutor’s comments “usurped the function of the Grand Jury” (see, People v Huston, 88 NY2d at 407, supra), nor that they “w[ere] part of an overall pattern of bias and misconduct” (see, People v Huston, 88 NY2d at 408, supra). As the Court of Appeals has noted:
“[N] ot every improper comment, elicitation of inadmissible testimony, impermissible question or mere mistake renders an indictment defective. Typically, the submission of some inadmissible evidence will be deemed fatal only when the remaining evidence is insufficient to sustain the indictment [citation omitted]. Likewise, isolated instances of misconduct will not necessarily impair the integrity of the Grand Jury proceedings or lead to the possibility of prejudice.” (88 NY2d at 409, supra [emphasis provided].)
In this case, the questioning by the prosecutor of the witness in question may have been inappropriate; however, it was nothing more than an isolated instance which in no way rendered the indictment defective. Any probable inference to the Grand Jury that this witness may have been lying in no way influenced the weight of the evidence presented to sustain the indictment. Accordingly, this branch of the defendant’s motion is denied.
II. Motion to Inspect and/or Release the Grand Jury Minutes
This application is denied. Defendant argues that the indictment was also defective where (1) the People did not properly instruct the Grand Jury regarding the intent element of the crime, (2) the evidence presented before the Grand Jury was legally insufficient to support the first count of the indictment, *185 to wit, the charge of attempted disseminating indecent material to minors in the first degree, and (3) the evidence presented before the Grand Jury was legally insufficient to support the second charge of the indictment, to wit, attempted patronizing a prostitute in the third degree.
A. Instructions to Grand Jury
This court finds that the People properly instructed the Grand Jury regarding the “intent’Ymens rea required for the statute. On consent of the People, the court has reviewed the minutes of the proceedings before the Grand Jury. The Grand Jury was properly instructed (see, People v Valles, 62 NY2d 36; People v Calbud, Inc., 49 NY2d 389), and the evidence presented, if accepted as true, would be legally sufficient to establish every element of the offenses charged (see, CPL 210.30 [2]). In making this determination, the court does not find that release of the Grand Jury minutes or certain portions thereof to the parties was necessary to assist the court.
B. Dismissal of Count 1
Defendant moves to dismiss the charges enumerated in the first count of the indictment on the ground that the accusatory instrument is facially insufficient in that the factual allegations do not support the crime charged. Defendant argues that the acts charged in count 1 — the attempted transmission of written sexually explicit speech — does not satisfy the “depict” element of the statute under Penal Law § 235.22. According to the defendant, this section of the Penal Law only contemplates an offensive visual communication as opposed to an offensive verbal communication.
Notably, this is an issue of first impression for this court. In fact, there does not appear to be any direct legislative history or reported case law on this point.
The court finds that the defendant’s proposed interpretation of the statute is too narrow and is not supported by the wording of the statute or by any legislative history. The defendant’s proposed interpretation reads the various statutory provisions out of context and without relation to their legislative purpose.
Penal Law § 235.22 (1) provides, in pertinent part, that a person is guilty of disseminating indecent máterial to minors in the first degree when he/she engages in the following conduct:
“[K] nowing the character and content of the communication which, in whole or in part, depicts actual or simulated nudity, sexual conduct * * * *186 and which is harmful to minors, he intentionally uses any computer communication system * * * to initiate or engage in such communication with a person who is a minor” (emphasis provided).
The word “depict” is not defined in this chapter of the Penal Law. As a result, defendant argues that it is limited to the dissemination of graphic images and that the Legislature intended to draw a distinction between the depiction of visual sexual images from their description.
The Legislature has instructed us that when interpreting the Penal Law, the provisions must be read “according to the fair import of their terms to promote justice and effect the objects of the law” (Penal Law § 5.00; People v Ditta, 52 NY2d 657, 660). As with other statutory provisions, those contained in the Penal Law are generally to be construed so as to give effect to their most natural and obvious meaning (see, McKinney’s Cons Laws of NY, Book 1, Statutes §§ 94, 271 [c]; People v Sansanese, 17 NY2d 302, 306).
A court is required to interpret a statute to actualize the intent of the Legislature. When the language of a statute is clear and unambiguous, it should be construed so as to give effect to the plain meaning of its words (see, Doctors Council v New York City Employees’ Retirement Sys., 71 NY2d 669, 675). If the words used by the Legislature have “a definite meaning, which involves no absurdity or contradiction, there is no room for construction and courts have no right to add to or take away from that meaning” (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583). This is particularly important where the definition of a crime is at issue, because courts must be diligent in ensuring that penal responsibility is not “extended beyond the fair scope of the statutory mandate” (People v Wood, 8 NY2d 48, 51; see also, People v Gottlieb, 36 NY2d 629, 632; McKinney’s Cons Laws of NY, Book 1, Statutes § 271 [c]). Applying these general rules, the statute in question will be examined by analyzing its plain meaning, legislative history, and underlying sense and purpose.
Contrary to the defendant’s contention, the statute under which the defendant is charged under count 1, attempted disseminating indecent material to minors in the first degree (Penal Law §§ 110.00, 235.22), cannot be read so narrowly as to limit its scope only to the transmission of pictorial images. The plain words of the statute, its stated purpose and relevant legislative history do not permit such a limited construction of the statute.
*187 In construing this statute, the starting point is to examine the statutory language, the clearest indicator of the legislative intent, and to determine whether it demonstrates the “plain meaning.” Based on section 5.00 of the Penal Law and section 94 of McKinney’s Consolidated Laws of NY, Book 1, Statutes, a word that is not defined anywhere in the Penal Law must be given its obvious and natural meaning. As noted by the Court of Appeals in People v Foley (94 NY2d 668, 681, cert denied 531 US 875), “every term of Penal Law § 235.22 is either defined in the Penal Law or has a plain and ordinary meaning.”
The word “depict” is not defined within the statute. Further, contrary to the defendant’s representations, it is similarly not defined anywhere within article 235 of the Penal Law nor is it defined anywhere else in the Penal Law. Defendant merely relies on other statutes that use both the words “depict” and “describe” to bolster his argument that the Legislature intended to draw a distinction between the two.
However, contrary to the defendant’s contentions, the definition of the word “depict” is not limited to a visual representation, but also includes “to represent in words; describe” (Webster’s II New College Dictionary, definition 2 [1995]) or “to picture in words; describe” (Webster’s American Dictionary, definition 2 [1999]). While dictionary definitions of words are not necessarily controlling, they are “useful as guide posts in determining the sense with which a word was used in a statute” (McKinney’s Cons Laws of NY, Book 1, Statutes § 234). Based on the definition of depict, it cannot be disputed that it includes the activities alleged to have been committed by the defendant herein.
According to the statute, the communication must both depict sexual conduct and must also be harmful to a minor. The statutory definition of what is deemed “harmful to minors” is “that quality of any description or representation, in whatever form, of nudity, sexual conduct, sexual excitement, or sadomasochistic abuse” (Penal Law § 235.20 [6] [emphasis provided]). Thus, clearly a verbal description or representation of sexual conduct would be deemed to be harmful to a minor. Thus, it would logically appear that a written sexually explicit communication that is transmitted to a minor is equally violative of this statute in that it too would be “harmful to a minor” where its purpose is the luring of a child into a sexual encounter.
Further, the legislative intent of the statute is quite clear. The statute was enacted to curtail and prevent the transmis *188 sion of sexually explicit “communications” over the Internet which would be harmful to a minor and which are intended to lure a minor into a sexual encounter. One of the sponsors of the legislation clearly expressed the purpose to be to “deter individuals who would use computer networks to lure children into sexual relations by intentionally transmitting indecent materials to children through the computer networks” (letter from Senator Sears to Governor, July 11, 1996, Bill Jacket, L 1996, ch 600). Thus, the clear purpose of the statute is to prohibit the sexual exploitation of children through the dissemination of sexual content speech over the Internet. Surely, the bill’s sponsors did not intend to limit the communication to only encompass transmission of sexually explicit visual images where a written sexually explicit communication is just as capable of bringing about such a harmful outcome as a visual communication.
Thus, the language of the statute, the legislative history and the common usage of the word “depict” all suggest that in the context of this statute, in order for a communication to violate this statute it is not necessary for it to be limited to a visual image, but, it includes a written communication of sexually explicit language. The defendant here communicated with an individual believed to be a minor and propositioned the individual to engage in the following sexual conduct: “bj, sex, a little party”; “like blow jobs and anal”; “bj kissing whatever you want.” Accordingly, this court finds that there was legally sufficient evidence to support the Grand Jury’s findings that the defendant committed the crime charged.
The two cases relied upon by the defendant to support his position, People v Foley (94 NY2d 668, supra) and People v Barrows (273 AD2d 246, lv denied 95 NY2d 888), are readily distinguishable from the case at bar. Both of these cases involved the transmission of visual images over the Internet to minors. However, contrary to the defendant’s reading of these two cases, neither dealt with the issue before this court, but, instead concerned the constitutionality of Penal Law § 235.22. The Courts’ holdings in both of these cases were limited to the facts involved therein where the defendants in both of these cases were charged with transmitting sexually explicit graphic materials over the Internet. However, at no point did either the Court of Appeals or the Third Department hold that section 235.22 only prohibited the transmission of sexually explicit images over the Internet. Indeed, People v Foley (94 NY2d 668) held that the statute “criminalizes the use of sexually ex *189 plicit communications designed to lure children into harmful conduct” (94 NY2d at 674, supra).
C. Dismissal of Count 2
The defendant also argues that this court should dismiss the second count of the indictment where there is no evidence that the defendant offered money in exchange for sex. The defendant argues that he merely offered the minor $30 or $50 as a “gift” and that he did not offer the minor money in exchange for any sexual conduct. This argument is meritless.
Throughout the course of the communications, the defendant repeatedly requested that the minor meet with him so that they may engage in sexual conduct with one another. In return, he would provide the minor with a monetary “gift.” Irrespective of the actual words used, it is clear that the defendant solicited an individual believed to be a minor for sex and, in exchange, offered that individual $30 or $50. Nowhere in the statute is there a requirement that the solicitation or request for sexual contact be immediately contemporaneous with any offer for the payment of a fee.
Further, the defendant’s argument that the second count should be dismissed because the defendant was never given notice that this charge would be presented to the Grand Jury is also without merit. Contrary to the defendant’s assertions, the People were not required to provide the defendant with notice of the expanded scope of the Grand Jury proceedings or for that matter of all the charges that the Grand Jury was likely to consider (see, People v Guzman, 233 AD2d 527, 528; People v Hernandez, 223 AD2d 351, 352; People v Choi, 210 AD2d 495, 496, lv denied 85 NY2d 971; People v Wilkins, 194 AD2d 638, 639, lv denied 82 NY2d 728; People v Simmons, 178 AD2d 972, 973, lv denied 79 NY2d 1007).
Criminal Procedure Law § 190.50 (5) (a) merely requires that the District Attorney “must notify the defendant or his attorney of the prospective or pending grand jury proceeding and accord the defendant a reasonable time to exercise his right to appear as a witness therein.” It is well settled that where the circumstances pertaining to the enhanced charge in the indictment involved the same complainant and the identical incident set forth in the felony complaint, a defendant “cannot legitimately argue that he was not aware of the potential scope of the proceedings” (People v Guzman, 233 AD2d at 528, supra; see also, People v Hernandez, 223 AD2d at 352, supra).
In the matter herein, where the defendant’s conduct was explicitly set forth in the felony complaint, “defendant should *190 have been aware that the nature and scope of the Grand Jury’s inquiry could lead to less or more serious charges” (People v Simmons, 178 AD2d at 972-973, supra). Accordingly, the defendant’s contention is without merit.
III. Motion to Suppress Statements
This branch of defendant’s motion is granted solely to the extent that the court will conduct a hearing prior to trial concerning any noticed statements allegedly made by the defendant on January 12, 2001 to determine the voluntariness thereof. This hearing shall be limited to the following issues:
1. whether the police had probable cause to arrest the defendant;
2. whether the defendant was in custody at the time of any statements;
3. if the defendant was in custody, whether the defendant was properly advised of his Miranda rights; and
4. whether the defendant knowingly and voluntarily waived said Miranda rights.
IV. & V. Motion for Sandoval Hearing and Motion for Disclosure of Uncharged Bad Acts
These applications are granted in their entirety. The hearings shall be consolidated and conducted immediately prior to trial. The People must notify the defendant of all specific instances of the defendant’s prior uncharged criminal, vicious or immoral conduct of which the People have knowledge and which the People intend to use at trial for purposes of impeaching the credibility of the defendant (see, CPL 240.43). The defendant has the burden of informing the court of whatever evidence of his prior conduct he seeks preclusion (see, People v Matthews, 68 NY2d 118; People v Malphurs, 111 AD2d 266, 269, lv denied 66 NY2d 616).
Further, a Ventimiglia hearing (see, People v Ventimiglia, 52 NY2d 350) shall be held immediately prior to trial to determine whether or not any evidence of uncharged crimes may be used by the People to prove their case in chief.
VI. Reservation to Make Further Motions
This application is denied. Any future motions must be brought by way of order to show cause setting forth reasons as to why said motion was not brought in conformity with CPL 255.20.